1

2

3

4

5

6

7                       UNITED STATES DISTRICT COURT

8                       EASTERN DISTRICT OF WASHINGTON

9   MELANIE ALLRED,                    )
    on behalf of RICHARD M. BROWN,     )  No. CV-06-0267-MWL
10                                      )
              Plaintiff,               )  ORDER GRANTING DEFENDANT'S
11                                      )  MOTION FOR SUMMARY JUDGMENT
    v.                                 )
12                                      )
    MICHAEL J. ASTRUE,                 )
13  Commissioner of Social             )
    Security,                          )
14                                      )
              Defendant.               )
15  _____  )

16        BEFORE THE COURT are the parties' cross-motions for summary

17  judgment. (Ct. Rec. 9, 11). The case was noted for hearing without

18  oral argument on March 19, 2007. (Ct. Rec. 8).  Attorney Mareen J.

19  Rosette represents Plaintiff; Special Assistant United States

20  Attorney Joanne E. Dantonio represents the Commissioner of Social

21  Security ("Commissioner").  Plaintiff filed a reply brief on March

22  9, 2007.  (Ct. Rec. 13).  The parties have consented to proceed

23  before a magistrate judge. (Ct. Rec. 3).  After reviewing the

24  administrative record and the briefs filed by the parties, the

25  Court **GRANTS** Defendant's Motion for Summary Judgment (Ct. Rec. 11)

26  and **DENIES** Plaintiff's Motion for Summary Judgment. (Ct. Rec. 9).

27                               **JURISDICTION**

28        On August 17, 2000, Plaintiff filed concurrent applications

for disability insurance benefits ("DIB") and supplemental
security income, alleging an onset date of November 15, 1999.
(Administrative Record ("AR") 81-83, 260-262).   The applications
were denied initially and on reconsideration. (AR 3-6, 60-63.) The
first hearing on Plaintiff's claim was held on January 22, 2002,
before Administrative Law Judge ("ALJ") Richard Hines. (AR 355-
387).   Plaintiff and vocational expert Fred Cutler testified.   In
a decision dated April 16, 2002, the ALJ denied Plaintiff's claim.
(AR 43-50).   The Appeals Council granted Plaintiff's request for
review, vacated the decision, and remanded for further
proceedings, including the opportunity to conduct a supplemental
hearing.  (AR 268-270.)  Plaintiff died on November 29, 2002, due
to respiratory failure and severe chronic obstructive pulmonary
disease; his daughter, Melanie Allred, pursued the applications as
a substitute party. (AR 321-322.) On September 17, 2003, ALJ Hines
conducted a second hearing. (AR 390-405.) At this hearing, Arthur
Craig, M.D., Allen Bostwick, Ph.D., and the deceased Plaintiff's
parents, Pauline and Ivan Brown, testified.   In a decision dated
October 16, 2003, ALJ Hines denied Plaintiff's claim.  (AR 16-25.)
After the Appeals Council denied review, Plaintiff appealed to the
United States District Court.   The parties stipulated to a remand
for further proceedings; this was ordered by the Court on January
5, 2005. (AR 428-429.)  ALJ Mary B. Reed held a supplemental
hearing on July 12, 2005. (AR 459-486.) Ivan Brown, the decedent
Plaintiff's father, and Daniel McKinney, a vocational expert,
testified.   In a decision dated January 27, 2006, the ALJ found
that Plaintiff not was disabled. (AR 414-423.) After the Appeals
Council denied review, the third ALJ decision became the final

decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g).  Plaintiff filed this action for judicial review pursuant to 42 U.S.C. § 405(g) on September 18, 2006.  (Ct. Rec. 1).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcripts, the ALJ's decisions, the briefs of both Plaintiff and the Commissioner and will only be summarized here.

Plaintiff was 41 years old on the date of his alleged date of onset and 44 years old on the date of his death.  (AR 415, 463). His educational background included obtaining a GED and attending one year of college. (AR 94).  Plaintiff's past relevant work consisted of driving a tractor trailer truck and taxicabs.  (AR 415, 94.)  He alleged disability since November 15, 1999, due to degenerative changes of the spine.  (AR 415, 88.)

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act (the "Act") defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).  The Act also provides that a plaintiff shall be determined to be under a disability only if any impairments are of such severity that a plaintiff is not only unable to do previous work but cannot, considering plaintiff's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy.  42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

- 3 -

Thus, the definition of disability consists of both medical and vocational components. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920.  Step one determines if the person is engaged in substantial gainful activities.  If so, benefits are denied.  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If not, the decision maker proceeds to step two, which determines whether plaintiff has a medically severe impairment or combination of impairments.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).

If plaintiff does not have a severe impairment or combination of impairments, the disability claim is denied.  If the impairment is severe, the evaluation proceeds to the third step, which compares plaintiff's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); 20 C.F.R. § 404 Subpt. P App. 1.  If the impairment meets or equals one of the listed impairments, plaintiff is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents plaintiff from performing work which was performed in the past.  If a plaintiff is able to perform previous work, that plaintiff is deemed not disabled.  20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At this step, plaintiff's residual functional capacity ("RFC")

1  assessment is considered.  If plaintiff cannot perform this work,
2  the fifth and final step in the process determines whether
3  plaintiff is able to perform other work in the national economy in
4  view of plaintiff's residual functional capacity, age, education
5  and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v),
6  416.920(a)(4)(v); *Bowen v. Yuckert*, 482 U.S. 137 (1987).

7      The initial burden of proof rests upon plaintiff to establish
8  a *prima facie* case of entitlement to disability benefits.
9  *Rhinehart v. Finch*, 438 F.2d 920, 921 (9th Cir. 1971); *Meanel v.*
10 *Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).  The initial burden is
11 met once plaintiff establishes that a physical or mental
12 impairment prevents the performance of previous work.  The burden
13 then shifts, at step five, to the Commissioner to show that (1)
14 plaintiff can perform other substantial gainful activity and (2) a
15 "significant number of jobs exist in the national economy" which
16 plaintiff can perform.  *Kail v. Heckler*, 722 F.2d 1496, 1498 (9th
17 Cir. 1984).

18                        **STANDARD OF REVIEW**

19     Congress has provided a limited scope of judicial review of a
20 Commissioner's decision.  42 U.S.C. § 405(g).  A Court must uphold
21 the Commissioner's decision, made through an ALJ, when the
22 determination is not based on legal error and is supported by
23 substantial evidence.  *See Jones v. Heckler*, 760 F.2d 993, 995
24 (9th Cir. 1985); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir.
25 1999).  "The [Commissioner's] determination that a plaintiff is
26 not disabled will be upheld if the findings of fact are supported
27 by substantial evidence." *Delgado v. Heckler*, 722 F.2d 570, 572
28 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence

is more than a mere scintilla, *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975), but less than a preponderance. *McAllister v. Sullivan*, 888 F.2d 599, 601-602 (9th Cir. 1989); *Desrosiers v. Secretary of Health and Human Services*, 846 F.2d 573, 576 (9th Cir. 1988). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations omitted). "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld. *Mark v. Celebrezze*, 348 F.2d 289, 293 (9th Cir. 1965). On review, the Court considers the record as a whole, not just the evidence supporting the decision of the Commissioner. *Weetman v. Sullivan,* 877 F.2d 20, 22 (9th Cir. 1989) (*quoting Kornock v. Harris*, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this Court, to resolve conflicts in evidence. *Richardson,* 402 U.S. at 400. If evidence supports more than one rational interpretation, the Court may not substitute its judgment for that of the Commissioner. *Tackett*, 180 F.3d at 1097; *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision. *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1987). Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir.

1987).

## **ALJ'S FINDINGS**

The ALJ found at the outset that Plaintiff met the nondisability requirements set forth in Section 216(i) of the Social Security Act and was insured for disability benefits through the date of his death. (AR 415.) The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity during the relevant period of time. (AR 416). The ALJ found at step two that Plaintiff suffered from the severe impairments of degenerative disk disease, chronic obstructive pulmonary disease ("COPD"), and obesity. (AR 416.) At step two the ALJ found that Plaintiff did not suffer from a medically determinable impairment due to a somatoform disorder, and that plaintiff's edema and hypertension were not severe impairments. (AR 417-419). The ALJ found at step three that plaintiff did not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 416).

At step four the ALJ concluded that plaintiff had the RFC to perform a wide range of sedentary work, including lifting up to 10 pounds occasionally, sitting a total of 6 hours out of 8, and standing and/or walking no more than 2 hours out of 8. (AR 417, 420). The ALJ found that Plaintiff should not be exposed to extremes in temperature and/or humidity or to respiratory inhalants. (AR 420). At step four the ALJ found that Plaintiff was unable to perform his past relevant work. (AR 421.) The ALJ relied on the testimony of a vocational expert at step five and found that there were a significant number of jobs in the economy that plaintiff could have performed during the relevant time

frame. (AR 421.)  Accordingly, the ALJ determined at step five of the sequential evaluation process that plaintiff was not disabled within the meaning of the Social Security Act.  (AR 421-422.)

### ISSUES

Plaintiff contends that the ALJ erred as a matter of law. Specifically, Plaintiff argues that the ALJ erred by (1) relying on the opinion of Allen Bostwick, Ph.D; (2) failing to properly credit the opinion of treating physician Gary Noland, M.D.; and 3) failing to properly credit plaintiff's symptom testimony with respect to his edema.  (Ct. Rec. 10, pp. 10-18).

The Commissioner responds that the ALJ's decision finding that plaintiff was not disabled is supported by substantial evidence and free of legal error. (Ct. Rec. 12, pp. 7-20).

### DISCUSSION

**A.  Opinions of Drs. Pollack and Bostwick**

Plaintiff contends that the ALJ erred by relying on the opinion of Allen Bostwick, Ph.D., because as a testifying physician his opinion was entitled to less weight than that of examining physician Dennis Pollack, Ph.D. (Ct. Rec. 10, pp. 10-12).  The Commissioner responds that: (1) the ALJ properly discounted Dr. Pollack's diagnosis of a somatoform disorder because there are no records of mental health treatment; (2) the two tests administered by Dr. Pollack do not provide a basis for diagnosing a somatoform disorder, and (3) Dr. Pollack's opinion appeared to be based in part on plaintiff's unreliable subjective complaints. (Ct. Rec. 12 at 7-9).

Dr. Pollack saw Plaintiff on January 3, 2002, and administered two tests: the MMPI-2 and the Wechsler Adult

Intelligence Scale-Revised.  (AR 222, 225-226).  Dr. Pollack found that Plaintiff's Full Scale IQ score placed him in the average range of intelligence.  (AR 225).  He diagnosed an undifferentiated somatoform disorder. (AR 226).  On February 15, 2002, D. Pollack opined that Plaintiff's ability to maintain attention and concentration for extended periods is fair, while his ability to perform activities within a schedule, maintain regular attendance, and be punctual is poor. (AR 227).  Dr. Pollack opined that Plaintiff's ability to complete a normal workday or workweek is poor (AR 227) and his ability to respond appropriately to supervision, co-workers, and pressures in a work setting is affected by his impairment, yet Dr. Pollack characterized plaintiff's ability to accept instruction and respond appropriately to criticism from supervisors as good. (AR 228).

The ALJ found Dr. Pollack's diagnosis and the accompanying limitations unsupported because: (1) although some of the diagnosis is based on test results, it appears that it is based at least in part on Plaintiff's less than credible self-reports; (2) Dr. Pollack failed to account for Plaintiff's tests showing average intelligence when he assessed several of the limitations; (3) there is no indication that Dr. Pollack had the benefit of reviewing Plaintiff's medical records prior to making his diagnosis, and (4) after he reviewed the entire record, Dr. Bostwick opined that Dr. Pollack's opinion was not supported by the other evidence of record.  (AR 417).

Dr. Bostwick opined at the hearing on September 17, 2003, that Plaintiff had no signs, symptoms, and findings consistent

with a DSM-IV diagnosis.[1]  (AR 397).  Plaintiff had no psychiatric

treatment history.[2]  The only mental health record is Dr.

Pollacks' assessment. (AR 397).  Dr. Bostwick observed that Dr.

Pollack's diagnosis of an undifferentiated somatoform disorder was

based primarily on Plaintiff's MMPI-2, a test that in his opinion

does not differentiate between organic conditions and functional

conditions. (AR 397).  Dr. Bostwick pointed out that none of the

physicians have commented on functional aspects to Plaintiff's

physical complaints [except Dr. Pollack].  They do not report

medication over-reliance or drug-seeking behavior. (AR 398).  Dr.

Bostwick opined:

> I just . . . don't [see] any evidence of record where the
> primary problem was a psychiatric contribution to his
> physical problems.  He had no history of diagnosed depression
> or anxiety or treatment for either, so there really wasn't a
> typical mental health condition that one would typically find
> associated with chronic physical problems.  So given that, I
> don't really think that he has any medically determinable
> impairment from a mental health standpoint.

(AR 398).

When weighing the conflicting medical testimony the ALJ

considered Plaintiff's credibility, and found him less than

completely credible.  (AR 419).  Credibility determinations bear

on the evaluation of medical evidence when an ALJ is presented

with conflicting medical opinions.  *Webb v. Barnhart*, 433 F. 3d

683, 688 (9th Cir. 2005).

---

[1]DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION
(DSM-IV)(1995).

[2]At the hearing on January 22, 2002, Plaintiff testified that the VA
had not decided whether to refer him for psychiatric treatment but "they were
thinking about it" and had prescribed wellbutrin (buproprion). (AR 361-362).
In the first decision the ALJ found that wellbutrin was prescribed for smoking
cessation. (AR 46). Plaintiff repeatedly denied feelings of depression or any
psychiatric problems. (*see e.g.*, AR 324, 182).  There is no record of a VA
referral for psychiatric evaluation or treatment.

The ALJ gave several reasons for finding Plaintiff less than completely credible: (1) his benefits application did not allege disability secondary to COPD (Exhibit 1E); (2) on a daily activity questionnaire in August of 2002, Plaintiff contended that he could not stand and/or walk at all, and could not sit for more than 1 hour(Exhibit 8E), which is inconsistent with his statements that he walked to medical appointments, could lift 10 pounds, cook, shop, carry groceries 50 feet, as well as sweep, vacuum, and wash dishes for 30 minutes at a time.  He was noted to have strained his back while lifting his neighbor in July of 2000 (Exhibit 6F/26), and in October of 2002, admitted he was able to walk at least 30 minutes a day (Exhibit 6F/12).  In January of 2002 Plaintiff prepared his own meals, maintained his personal hygiene, washed dishes, did his laundry, and was able to concentrate to watch television (Exhibit 8F/3); (3) Plaintiff told Dr. Pollack that he had a hearing impairment, yet that is not supported in the record; similarly, Plaintiff testified in 2002 that he suffered from black out spells 3-4 times a week for 10 minutes (with a loss of consciousness), yet that complaint is not reflected in any treatment notes and there is no medically determinable impairment that would account for those complaints (Exhibit 11B)[3] while at another point Plaintiff denied seizures or loss of consciousness (Exhibit 6F/17-18). (AR 419).

As noted, when presented with conflicting medical opinions,

---

[3]The ALJ is partially correct. On October 12, 2000, Plaintiff complained of two "strokes" the previous night (AR 154) and reported "mini-seizures" to the VA on October 23, 2000 and March 20, 2001 (AR 179, 175).  A head CT on March 26, 2001, was negative. (AR 171). The ALJ is correct that on another occasion Plaintiff failed to acknowledge that he had experienced loss of consciousness. (AR 184).

the ALJ must determine credibility and resolve the conflict.
*Matney v. Sullivan*, 681 F. 2d 1016, 1019 (9th Cir. 1992).  It is
the province of the ALJ to make credibility determinations.
*Andrews v. Shalala*, 53 F. 3d 1035, 1039 (9th Cir. 1995).  However,
the ALJ's findings must be supported by specific cogent reasons.
*Rashad v. Sullivan*, 903 F. 2d 1229, 1231 (9th Cir. 1990).  Once
the claimant produces medical evidence of an underlying
impairment, the ALJ may not discredit testimony as to the severity
of an impairment because it is unsupported by medical evidence.
*Reddick v. Chater*, 157 F. 3d 715, 722 (9th Cir. 1998).  Absent
affirmative evidence of malingering, the ALJ's reasons for
rejecting the claimant's testimony must be "clear and convincing."
*Lester v. Chater*, 81 F. 3d 821, 834 (9th Cir. 1995).  "General
findings are insufficient: rather the ALJ must identify what
testimony is not credible and what evidence undermines the
claimant's complaints."  *Lester*, 81 F. 3d at 834; *Dodrill v.
Shalala*, 12 F. 3d 915, 918 (9th Cir. 1993).  The ALJ may consider
at least the following factors when weighing the claimant's
credibility: "[claimant's] reputation for truthfulness,
inconsistencies either in [claimant's] testimony or between [his]
testimony and [his] conduct, [claimant's] daily activities, [his]
work record, and testimony from physicians and third parties
concerning the nature, severity, and effect of the symptoms of
which [claimant] complains."  *Thomas v. Barnhart*, 278 F. 3d 947,
958-959 (9th Cir. 2002), *citing Light v. Soc. Sec. Admin.*, 119 F.
3d 789, 792 (9th Cir. 1997).

    The ALJ's reasons for finding Plaintiff less than fully
credible are clear and convincing.  The inconsistencies in

Plaintiff's statements, the inconsistencies between his statements and his conduct, claimed impairment not supported by the medical record, and the extent of his daily activities all fully support the ALJ's finding. *See Thomas v. Barnhart*, 278 F. 3d at 958-959 (9th Cir. 2002), *citing Light* at 119 F. 3d at 792.

A careful review of the record reveals that substantial evidence supports the ALJ's finding that Plaintiff did not suffer from a medically determinable mental impairment due to a somatoform disorder and that there was no basis for the cognitive and social limitations assessed by Dr. Pollack. (AR 417). Other than Dr. Pollack's evaluation, the ALJ is correct that there is no medical evidence of any mental impairment or mental health treatment in the record. (AR 223, 397-398). The ALJ is correct that much of Dr. Pollack's opinion appears to be based in part on Plaintiff's unreliable self-reporting, particularly since Dr. Pollack apparently did not have Plaintiff's medical records.[4] The ALJ appropriately relied on Dr. Bostwick's opinion, which was based on a review of the entire record, that there was no evidence of a severe mental impairment.

The evidence supports the ALJ's finding that Plaintiff failed to meet his burden of establishing that he suffered from the severe impairment of a somatoform disorder within the meaning of the regulations during the relevant time period. *See Tackett v. Apfel*, 180 F. 3d 1094, 1098 (9th Cir 1999) (holding that, if the

---

[4]The diagnostic criteria for 300.81, Undifferentiated Somatoform Disorder, includes one or more physical complaints and, when there is a related general medical condition, either the physical complaints or resulting social or occupational impairment is in excess of what would be expected from the history, physical examination, or laboratory findings. DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, FOURTH EDITION (DSM-IV), at 451-452(1995).

evidence reasonably supports a social security decision, the court must uphold the decision and may not substitute its judgment for the agency's).

**B. Treating Doctor Noland's Opinion**

Plaintiff alleges the ALJ failed to properly credit the opinion of treating physician Gary Noland, M.D. (Ct. Rec. 10, pp. 13-15).  The Commissioner responds that the ALJ gave specific and legitimate reasons for rejecting the limitations assessed by Dr. Noland. (Ct. Rec. 12, pp. 15-18).

A treating physician's opinion is given special weight because of familiarity with the claimant and the claimant's physical condition. *Fair v. Bowen*, 885 F.2d 597, 604-05 (9th Cir. 1989).  Thus, more weight is given to a treating physician than an examining physician. *Lester*, 81 F.3d at 830.  Correspondingly, more weight is given to the opinions of treating and examining physicians than to nonexamining physicians.

In addition to the testimony of a nonexamining medical advisor, the ALJ must have other evidence to support a decision to reject the opinion of a treating physician, such as laboratory test results, contrary reports from examining physicians, and testimony from the claimant that was inconsistent with the treating physician's opinion. *Magallanes*, 881 F.2d at 751-52; *Andrews*, 53 F.3d 1042-43.  "An ALJ may reject the testimony of an examining, but nontreating physician, in favor of a nonexamining, nontreating physician when he gives specific, legitimate reasons for doing so, and those reasons are supported by substantial record evidence." *Roberts v. Shalala*, 66 F.3d 179, 184 (9th Cir. 1995)(citation omitted).

On June 4, 2001, Dr. Noland saw Plaintiff for complaints of a chronic cough and shortness of breath which were worsening, and for back pain which had slowly worsened over the past year. (AR 229-230). Dr. Noland assessed COPD/asthma/chronic bronchitis/hemoptysis, as a moderately severe impairment, and chronic mechanical low back and interscapular pain, also a moderately severe impairment. (AR 229). He assessed significant dyspnea with exertion and did not know when Plaintiff could be released for work. (AR 230). Dr. Noland noted that a pulmonary evaluation was pending, Plaintiff was starting new pulmonary medication, and he opined that improved lung function should allow graded exercise for back improvement. (AR 230). Dr. Noland pointed out that NSAIDs for back pain had been of limited benefit. (AR 230). The day of the appointment Plaintiff began using a nebulizer. (AR 230).

On October 10, 2001, Plaintiff saw Dr. Noland to complete disability forms for DSHS claiming total disability due to COPD. (AR 234). Dr. Noland noted that Plaintiff could climb one flight of stairs only if he is able to rest at the top, did not require oxygen at home, and complained of a chronic cough and episodes of streaks of blood in his sputum several months ago but not currently. (AR 234). Dr. Noland observed that Plaintiff has a history of lower back pain which is not totally disabling but requires changing positions frequently and would limit his "lifting ability to sedentary tasks." (AR 234). Unlike his June assessment, in October, based apparently on Plaintiff's reports of a history of low back pain, Dr. Noland opined that Plaintiff "must be free to change positions frequently." (AR 232). As the ALJ

points out, Dr. Noland gave no explanation for the new limitation. (AR 418).  On the form evaluation completed the same day, Dr. Noland opined that Plaintiff's low back pain was a mild impairment. (AR 231).  Plaintiff continued to roll his own cigarettes, and smoked heavily: 3 packs per day.  (AR 234; 236). Dr. Noland opined that when Plaintiff completed his respiratory evaluation and controlled his cough he could likely return to sedentary work. (AR 232). He strongly advised Plaintiff to stop smoking.  (AR 232).  The ALJ notes that on June 26, 2002, Dr. Noland opined, based apparently only on pulmonary function tests, that Plaintiff was severely limited, i.e., unable to lift at least 2 pounds or stand and/or walk. (AR 418, citing Exhibit 14F).

The ALJ gave no weight to Dr. Noland's October of 2001 opinion because it was not supported by acceptable diagnostic tests or objective examination.  (AR 418).  She continued:

> Although the claimant may have been severely limited in June of 2002, it is noted that such a level of limitation had not persisted and would not persist for 12 consecutive months.[5] Moreover, the claimant achieved the pulmonary function results on which the opinion was based because of his continued smoking despite treatment recommendations otherwise.

(AR 418).

When assessing Dr. Noland's opinion, the ALJ considered the opinion of examining osteopath Mark Hart, D.O. (AR 418).  On January 16, 2001, Dr. Hart opined that Plaintiff could perform light work.  (AR 418, citing Exhibit 3F at AR 143).  Pulmonary function studies in March of 2001 showed that Plaintiff had a

---

[5]With respect to the alternative requirement of "disability" as defined by Social Security, "or expected to result in death," the ALJ's October 16, 2003, decision correctly points out that since Plaintiff was assessed as able to perform sedentary work until just five months before his death, there was no medical expectation of death. (AR 21).

moderate lung defect but a good response to bronchodilator. (AR 418, citing Exhibit 6F/15 at AR 221). Testing at that time showed normal range of motion of the back (AR 177); sensation to light touch was intact and Plaintiff's DTRs were intact and symmetric (AR 174). (AR 418, citing Exhibit 6F/7 and 10).

The ALJ also considered the September 17, 2003, hearing testimony of Arthur Craig, M.D. (AR 419). After reviewing the record, Dr. Craig opined that during the relevant time frame Plaintiff was able to perform sedentary work. (AR 395).

The ALJ considered the record as whole when she weighed the medical evidence:

> The claimant's treatment history is also inconsistent with disability. The record fails to show that he sought or required significant forms of treatment such as periods of hospital confinement, emergency room care or significant office care other than for routine maintenance. He was only prescribed intermittent anti-inflammatories and muscle relaxants for his musculoskeletal complaints. His failure to follow treatment recommendations, particularly in regard to smoking cessation suggest that his symptoms were not as severe as he alleged. His allegations of the need to elevate his legs due to persistent lower extremity edema are inconsistent with the objective medical evidence. Although the claimant was noted as having some leg edema in late 2001, this resolved with a medication switch in January of 2002 (Exhibit 11F/5 and 10-14). There is no mention of the edema in February of 2002 (Exhibit 13F/4).

(AR 419).

The ALJ gave specific, legitimate reasons for rejecting the severe limitations assessed by Dr. Noland, and those reasons are supported by substantial evidence. The ALJ correctly notes that Dr. Nolan gave no explanation in his October 10, 2001, opinion for Plaintiff's need to change positions frequently. (AR 418). The ALJ correctly observes that this opinion is not supported by acceptable diagnostic tests or objective examination. (AR 418). Lumbar x-rays in August of 2000 were normal and showed only

miminal degenerative changes. (AR 207). Plaintiff stopped
physical therapy for his back pain in November of 2000 because he
"felt he was doing better with just a walking program." (AR 182).
Although not mentioned by the ALJ, the opinion is also
inconsistent in that at the same time he assessed the need to
change positions frequently, Dr. Noland assessed Plaintiff's
reported chronic mechanical low back pain as only a mild
impairment. (AR 231).

The ALJ is correct that the record does not support
Plaintiff's claims of severe, ongoing edema during the relevant
period. (AR 419-420). On February 17, 2001, Plaintiff
experienced edema in his legs, indicated that he recently started
taking felodipine, and had noticed similar swelling when he took
the drug previously. (AR 243). Dr. Noland opined that Plaintiff
was allergic to felodipine. (AR 244). Eight months later, on
October 29, 2001, Plaintiff spoke with a consulting nurse at the
VA complaining of edema in his feet from felodipine. "He stated
that it has helped his bp. But the edema is making it hard for him
to work since he has problems putting his shoes on." (AR 237).
Again an allergic response to felopidine is noted. (AR 244). On
January 23, 2002, Plaintiff remained concerned about edema and was
encouraged to stop taking felodipine. (AR 245). As the ALJ
correctly notes, in February of 2002, Richard Lambert, M.D.,
stated upon exam: "extremities without edema." (AR 419, relying
on AR 326).

The ALJ observes that while Dr. Noland's June 26, 2002,
opinion that Plaintiff was severely limited may have been correct,
the record does not establish that such severity had persisted or

would persist for 12 consecutive months. (AR 418).  This is
supported by Dr. Noland's note on May 9, 2002, that Plaintiff
experienced mild shortness of breath with exertion. (AR 323).  As
noted, the ALJ assessed credibility when weighing the conflicting
medical opinions.  The ALJ found Plaintiff less than fully
credible for a variety of reasons, including his inconsistent
statements and admitted activities which were not compatible with
the degree of limitation alleged.  It is the ALJ who determines
credibility and resolves conflicts and ambiguity in the medical
and non-medical evidence.  *Morgan v. Comissioner*, 169 F.3d 595,
599 (9th Cir. 1999).  When reviewing the ALJ's decision, the Court
must uphold the decision if the findings of fact are supported by
substantial evidence.  *Delgado v. Heckler*, 722 F.2d 570, 572 (9th
Cir. 1983) (citing 42 U.S.C. § 405(g)).  Moreover, the Court must
ultimately uphold the ALJ's decision where the evidence is
susceptible to more than one rational interpretation.  *Magallanes
v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  It is not the role
of the Court to second-guess the ALJ.  If evidence supports more
than one rational interpretation, the court must uphold the
decision of the ALJ.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th
Cir. 1984).

The ALJ observed that the Plaintiff's failure to follow
through with the treatment strongly recommended by his doctors,
smoking cessation, suggested that his symptoms were not as severe
as he alleged. (AR 419).  While failing to stop smoking has not
been directly addressed by the regulations, failing to follow
through with medical treatment has been addressed.  The amount of
treatment is "an important indicator of the intensity and

persistence of [Plaintiff's] symptoms" C.F.R. § 416.929(c)(3).

Even if the ALJ improperly relied on plaintiff's lack of follow through with respect to smoking cessation when assessing his credibility, the error is harmless because the other reasons relied upon by the ALJ are proper and are supported by substantial evidence.[6]

As noted, the record supports the ALJ's finding that Plaintiff's daily activities were inconsistent with his alleged limitations. (AR 419).  In his daily activity questionnaire on August 30, 2000, Plaintiff indicated he could not walk any distance before needing to rest. (AR 121).  On October 23, 2000, he told the VA that he walked 30 minutes plus daily. (AR 179). Plaintiff lifted his neighbor in July of 2000; the next month he stated that he could only lift 10 pounds occasionally. (AR 193, 122).

Even under the clear and convincing standard of review, the ALJ's credibility determination is fully supported by the record. The reasons given by the ALJ for discrediting some of Dr. Noland's opinions are specific, legitimate and supported by substantial evidence.  The ALJ is correct that when Plaintiff stopped taking felopidine, the edema resolved and was not reported by treating physicians. (AR 420).

Based on the foregoing, the undersigned finds that the ALJ's weighing of the medical evidence is based on substantial record evidence and is free of legal error.

---

[6]An error is harmless when the correction of that error would not alter the result.  *See Johnson v. Shalala*, 60 F. 3f 1428, 1436 n. 9 (9th Cir. 1995). Further, an ALJ's decision will not be reversed for errors that are harmless. *Burch v. Barnhart*, 400 F. 3d 676, 679 (9th Cir. 2005)*citing Curry v. Sullivan*, 925 F. 2d 1127, 1131 (9th Cir. 1991).

Accordingly,

**IT IS ORDERED**:

1.    Defendant's Motion for Summary Judgment (**Ct. Rec. 11**) is **GRANTED.**

2.    Plaintiff's Motion for Summary Judgment (**Ct. Rec. 9**) is **DENIED.**

3.    Judgment shall be entered for **DEFENDANT**.

4.    The District Court Executive is directed to enter this Order, provide a copy to counsel for Plaintiff and Defendant, and **CLOSE** the file**.**

**DATED** this 21st day of March, 2007.

                          s/Michael W. Leavitt
                        MICHAEL W. LEAVITT
                UNITED STATES MAGISTRATE JUDGE